# EXHIBIT "A"

BRONSTER FUJICHAKU ROBBINS
A Law Corporation

**Electronically Filed
SECOND CIRCUIT
2CCV-21-0000362
24-NOV-2021
01:54 PM
Dkt. 1 CMPS**

MARGERY S. BRONSTER      4750
CATHERINE L. AUBUCHON   7661
KEVIN A. MORRIS               11147
1003 Bishop Street, Suite 2300
Honolulu, Hawaiʻi  96813
Telephone:  (808) 524-5644
Facsimile:   (808) 599-1881
Email:  mbronster@bfrhawaii.com
        caubuchon@bfrhawaii.com
        kmorris@bfrhawaii.com

Attorneys for Plaintiff
MISAKI'S, INC.

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

STATE OF HAWAIʻI

| | |
|---|---|
| MISAKI'S, INC., a Hawaiʻi Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>HAWAIIAN ELECTRIC COMPANY, INC., a for-profit Hawaii Corporation,<br><br>Defendant. | Civil No. _____<br>(Other Civil Action)<br><br>COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS |

**COMPLAINT**

Plaintiff MISAKI'S, INC., a Hawaiʻi Corporation ("Misaki's" or "Plaintiff"),

by and through its counsel, Bronster Fujichaku Robbins, files this Complaint

against Defendant HAWAIIAN ELECTRIC COMPANY, INC., a for-profit Hawaii

corporation ("HECO" or "Defendant"), and alleges and avers the following:

Exhibit "A"

## INTRODUCTION

1.    After 38 years of false promises from Defendant to remediate Plaintiff's property that was rendered unusable through Defendant's contamination, Plaintiff brings this action against Defendant pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607 *et seq.*, the Hawaii Environmental Response Law ("HERL"), Hawaiʻi Revised Statutes ("HRS") chapter 128D, and Hawaiʻi common law for (i) reimbursement and indemnification for all past, present, and future costs in response to the release of hazardous substances on property formerly occupied and controlled by Defendant as the successor in interest to both Molokai Electric Company, Limited ("MOECO") and Maui Electric Company, Limited ("MECO"), (ii) a declaratory judgment as to liability for any and all response costs, and (iii) damages.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to Hawaiʻi Revised Statutes ("Haw. Rev. Stat.") § 603–21.5(3) and Haw. Rev. Stat. Chapter 378.

3.    Venue is proper in this Court pursuant to Haw. Rev. Stat. § 603–36(5).

## THE PARTIES

4.    Plaintiff MISAKI'S, INC., is a corporation organized under the laws of the State of Hawaiʻi whose principal place of business is at Kaunakakai, Hawaiʻi.

5.      Defendant HAWAIIAN ELECTRIC COMPANY, INC., a subsidiary of Hawaiian Electric Industries, Inc., is a Hawaiʻi corporation whose principal place of business is 900 Richards Street, Honolulu, Hawaiʻi.

## FACTUAL ALLEGATIONS

6.      MOECO began operating a power plant in 1932 at a parcel located in Kaunakakai, Molokai, and identified as Lots 43-A-2, 43-A-3, 43-A-4, 43-A-5, and 288, and being all of the land described in and covered by the Transfer Certificate of Title Nos. 38,151 and 70,398 issued to Molokai Electric Company, Limited  (the "Property").

7.      In 1983, MOECO sold the Property to Plaintiff and leased it back from Plaintiff pursuant to an Occupancy Agreement while winding down its power plant and transitioning its operations to a new location.  MOECO eventually left the Property in 1987, two years beyond the two years agreed to in the Occupancy Agreement ("Lease").

8.      While operating the power plant, chemicals handled by MOECO at the site both before and after leasing the Property included a variety of petroleum-based products, anti-corrosive paints (e.g., lead-based), and solvents that have severely contaminated the Property.  According to Defendant's July 2021 Final Site Characterization Summary, the chemicals "were used as dielectric materials, coolants, and lubricants in transformers, capacitors, ballasts, and motor/hydraulic system oils."  As such, the use of these contaminates has created "risks to human and ecological populations."

3

9.      Plaintiff's owners, the Misaki family, purchased the Property to expand their grocery store, Misaki's Grocery and Dry Goods, the primary grocery store on Molokai.  Misaki's first opened in 1922 selling candy, ice cream, and a few other items but eventually expanded to offer food, groceries, and canned goods.  In 1960, Misaki's moved to its current location a block from the Property and built a warehouse that sits behind the store.  However, the Misaki family always dreamed of expanding even further to better accommodate the rise in demand as the population grew on Molokai.

10.     Unbeknownst to Plaintiff at the time of purchasing the Property in 1983, MOECO's use of the Property rendered it unsafe for construction due to years of contamination.  Tests over the last two decades by the Environmental Protection Agency ("EPA") and state Department of Health ("DOH") show several toxic contaminants are present at the site.  Those include petroleum and PCBs that were used to insulate the electrical components of MOECO's power plant.

11.     Despite HECO officials stating there is no risk for exposure to the underground contaminants, Plaintiff has been stonewalled from fulfilling the purpose of purchasing the Property.  Without the ability to disrupt the soil of the Property, the Misaki family will never be able to construct the larger grocery store until the contaminants are removed from the soil, an extremely expensive process.  For over 35 years, Misaki's has been told time and time again by representatives of Defendant that it will clean-up the Property, yet, to date, HECO has not done so.

12. Defendant does not dispute that it is responsible for the removal of all contaminants. However, the continued delays in remediating the contamination have cost Plaintiff significant losses due to its inability to use the Property as it intended when purchased. Had Plaintiff been aware of the significant contamination to the Property, Plaintiff never would have purchased it. Moreover, Plaintiff would not have leased the Property back to Defendant for two years had it known Defendant would continue contaminating the soil and deliver the Property in a contaminated state.

13. The language contained in the 1983 sale documents and subsequent Lease of the Property to MOECO demonstrates Defendant's liability to Misaki's to indemnify for all costs associated with decontaminating the Property. Additionally, it is undisputed that the contamination occurred prior to the 1983 sale, as well as through the end of the Lease in 1985 and until the equipment was removed in 1987.

14. Under federal law, all potentially responsible parties remain fully liable for remediation of contamination. However, only the party who caused the pollution is responsible under CERCLA for any contamination it caused while in possession of the Property. Therefore, even though Misaki's owned the Property during the Lease, it is not responsible for the PCBs MOECO continued to use until the end of the Lease and, therefore, is not liable for its removal.

15. To apply CERCLA liability under Hawai'i law, an indemnification clause must be either broad enough to cover any and all claims, or clearly refer

5

to environmental liability.  Here, the Lease clearly provided broad indemnification for all liability related to Plaintiff's claims against Defendant.

16.    Specifically, Covenant 17 of the Lease states, in pertinent part, that Defendant "will indemnify and hold [Plaintiff] harmless from and against all claims and demand for loss or damage, including without limitation, property damage […] arising out of or in conjunction with the use or occupancy of the premises by [MOECO], […] or any failure by [MOECO] to keep said premises in a safe condition, and [MOECO] will reimburse [Plaintiff] for all their costs and expenses, including without limitation, all attorney's fees incurred in connection with the defense of any such claims, and will hold all goods, materials, furniture, fixtures, equipment, machinery and other property whatsoever on or in the premises at the sole risk of [MOECO] and hold [Plaintiff] harmless from and against all loss or damage thereto by any cause whatsoever, including without limitation, loss or damage resulting from any discharge or leaking of water onto the premises or from any conduits or facilities therein."

17.    None of the terms within the Lease are ambiguous or limiting, and the language is appropriately broad enough to encompass all environmental claims.

18.    In addition, Defendant is liable to Misaki's under the terms of the Lease.  Defendant is liable under Covenant 10 of the Lease for 1) not keeping "the premises in good order and a strictly sanitary condition" in accordance with "all laws, ordinances, rules and regulations now or hereafter made by any

government authority," which include CERCLA and HERL, and 2)

indemnification and reimbursement "from and against all claims and demands

for loss or damage" and "for all costs and expenses … incurred."

19.     The Lease Agreement's Observance of Laws, Indemnity, and

Surrender Clauses created a duty for MOECO to not continue the pollution

(violate laws) and to return the Property "*in good repair, order and condition.*"

Therefore, Defendant is additionally liable for MOECO's breach of its obligation

to deliver possession of the Property in good repair, order, and condition at the

expiration of the Lease.

20.     Defendant is also liable to Misaki's for carryover rent as a remedy

for breaching its surrender obligations under the Lease and at common law.

As the successor to MOECO and MECO, Defendant is bound to comply with

the Surrender Clause that MOECO breached.  Not only is Defendant liable for

the two additional years it occupied the Property beyond the Lease, it is also

liable for every subsequent year that the Property remains contaminated and

unusable.

21.     Independent of the Surrender Clause, common law also imposes

surrender obligations. Hawaiʻi law recognizes that independent of any express

covenant, applicable provisions of law impose the obligation upon a lessee to

restore the premises at the termination of a tenancy.  Here, MOECO did not

fully deliver possession of the Property to Misaki's at the end of the Lease, nor

did it leave the Property "in good repair, order and condition" except for

"reasonable wear and tear."

22.     Possession means the actual dominion and control of the property, free from interference with the complete use and enjoyment of the property.  It means the same dominion and ability to hold and enjoy which the lessee had a right to expect from the lessors when he first accepted the lease and which was actually accorded to him by the lessors at that time.  MOECO did not deliver the Property in a condition that afforded Misaki's "complete use and enjoyment" of the Property.

23.     Beyond the contamination, MOECO left behind remnants of structures it installed.  This includes a pipeline that HECO's own Final Site Characterization report noted that "anecdotal evidence suggests that there were likely one or more releases from the former underground fuel pipeline that supplied the former MOECO generators from the fuel farm located adjacent to the Kaunakakai Pier."  In fact, many Molokai residents have testified that a sheen continues to be seen in the area of the pipeline that runs under the Property.  This suggests that fuel continues to move underground despite the pipeline being unused for over 30 years since a rainbow sheen is visible in the harbor when the tide is low.

24.     Multiple environmental investigations have been conducted to determine the nature and extent of contamination at the site.  Each of these investigations have indicated the presence of multiple environmental hazards.  Still, nothing has been done by Defendant to remove the contaminants.  MECO and HECO have stated since as early as 1994 and as recently as July 2021

that studies are being conducted and clean-up efforts will begin shortly

However, nothing has been done to physically remove the contaminants.

26. MOECO returned the premises contaminated and in disrepair,

failing to deliver possession of the Property to Misaki's as required by the

express and implied covenants of surrender, and has failed to remediate the

pollution.  Under Hawaiʻi common law, a tenant who fails to surrender full

possession of the leased premises at the termination of the lease, thereby

depriving the landlord of the full use and enjoyment of the premises, is treated

as a holdover tenant.  Hawaiʻi common law further provides that a holdover

tenant is liable to pay rent for the period that possession is not fully

relinquished.

26. When a tenant refuses to surrender possession of the leased

premises at the end of the lease term and in good condition, the landlord is

entitled to recover all the loss he has sustained by not being put in possession

of the entire premises at the end of the term.  Additionally, a landlord, such as

Plaintiff, is entitled to a sum equivalent to the rent which he has lost, and to

the expenses he has been put into taking legal proceedings to recover full

possession of the Property.

27. Despite the clarity of the Defendant's obligations, Defendant

continues to drag its feet in remediating the environmental condition of the

Property, thus extending the timeframe for testing well beyond the termination

of the Lease.  Since the time MOECO moved to its current location in 1987,

Misaki's has been told countless times that Defendant is working towards

9

remediating the Property.  However, after 35 years of owning contaminated land that has cost them years of lost revenue from the delayed expansion of the grocery store, HECO must compensate Misaki's for its loses.

## FIRST CLAIM FOR RELIEF
## LIABILITY UNDER CERCLA, 42 U.S.C. § 9607(a)

28.     Plaintiff incorporates by reference the paragraphs above.

29.     The Property constitutes a "facility" as defined in CERCLA, 42 U.S.C. § 9601(9).

30.     HECO is a "person" as defined in CERCLA, 42 U.S.C. § 9601(21).

31.     Defendant's predecessors in interest operated or caused to be operated a power plant that used and stored petroleum-based products, transformers, anti-corrosive paints (e.g., lead-based), and solvents.  As such, HECO and its predecessors in interest constitute the "owner or operator" of a "facility" as those terms are defined in CERCLA, 42 U.S.C. §§ 9601(9) and (20) based on its prior ownership and lease of the Property.

32.     The use of the Property by Defendant's predecessors in interest caused the release of hazardous substances onto the Property by means including, but not limited to, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment.

33.     In direct contravention of the parties' Lease, Defendant failed to remediate the Property before returning the premises to Plaintiff in 1987, two years after the Lease expired.

34.     As a result of Defendant's wrongful actions, Defendant is liable to Plaintiff for all available damages related to the pollution at the Property.

**SECOND CLAIM FOR RELIEF**
**LIABILITY UNDER HERL, HRS § 128D-18(d)**

35.     Plaintiff incorporates by reference the paragraphs above.

36.     The Property constituted a "facility" as defined in HRS § 128D-1.

37.     HECO constitutes a "person" as defined in HRS § 128D-1.

38.     Defendant's predecessors in interest operated or caused to be operated power plant on the premises and later leased the Property while continuing its operations for another four years.  Such businesses used underground lines and tanks, which are known sources of environmental contaminants, especially from petroleum products.  As such, Defendant and its predecessors in interest constitute the "owner or operator" of a "facility" as those terms are defined in HRS § 128D-1.

39.     The use of the Property by Defendant's predecessors in interest caused the release of hazardous substances onto the Property by means including, but not limited to, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment.

40.     Defendant has not commenced remediation of the Property to excavate the contaminated soil on the Property.  As such, the release of hazardous substances onto the Property by Defendant and/or its predecessors in interest may cause Plaintiff to incur any response costs should the removal cause further contamination.

11

41.     Any response costs that may be incurred are necessary and consistent with HRS Chapter 128D, the State Contingency Plan of the State of Hawaiʻi as set forth in Title 11 of the Hawaiʻi Administrative Rules Chapter 451, and other applicable administrative rules of the State of Hawaiʻi.

42.     Pursuant to HRS § 128D-18(d), Plaintiff is entitled to contribution and/or indemnity from Defendant for any response costs incurred by Plaintiff.

43.     As a result of Defendant's wrongful actions, Defendant is liable to Plaintiff for all available damages.

**THIRD CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT OF LIABILITY**
**FOR RESPONSE COSTS**

44.     Plaintiff incorporates by reference the paragraphs above.

45.     An actual and substantial controversy now exists between Plaintiff and Defendant as to Defendant's liability for any and all response costs associated with the Property.

46.     Plaintiff seeks a declaration of its rights and Defendant's liability for any and all response costs pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201 *et seq.*, and CERCLA, 42 U.S.C. §§ 9607(a) and 9613(g)(2).

47.     CERCLA, 42 U.S.C. § 9613(g)(2) provides: "In any such action described in this subsection [relating to cost recovery actions under 28 U.S.C. § 9607], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

12

48.     Plaintiff will continue to incur costs associated with the Property, including but not limited to enforcement costs that are recoverable as response costs under CERCLA, 42 U.S.C. § 9601(25).

49.     Defendant's failure to deliver the Property in a remediated and safe condition has caused damages to Plaintiff.  Therefore, Plaintiff is entitled to entry of a declaratory judgment that Defendant is liable for any and all response costs that may be incurred by Plaintiff in evaluating, removing, and remediating the contamination on the Property.

## FOURTH CLAIM FOR RELIEF
### BREACH OF CONTRACT

50.     Plaintiff incorporates by reference the paragraphs above.

51.     Defendant is contractually bound to honor the obligations contained in the Lease.

52.     Covenant 10 of the Lease required Defendant to keep the Property "in a strictly clean, neat and sanitary condition[.]"  The release of hazardous substances onto the Property by Defendant's predecessors in interest is a breach of the foregoing provision of Covenant 10.

53.     Covenant 19 of the Lease provided: "At the end of said term or other sooner determination of this agreement, Seller will peaceably deliver up to Buyer possession of the premises, together with all improvements upon and belonging to Buyer, in good repair, order and condition, except for reasonable wear and tear and as otherwise expressly provided herein[.]"  Defendant's predecessors in interest breached Covenant 19 by releasing hazardous substances in excess of the DOH limits onto the Property during the term of

13

the Lease and delivered possession of the Property to Plaintiff two years after the end of the Lease with such hazardous substances remaining thereon.

54.     Covenant 18 of the Lease provided that "the Lessee will not commit or suffer any act or neglect whereby the demised premises or any erection … Defendant breached Covenant 18 because its predecessors in interest released hazardous substances onto the Property, and as a result, the EPA and DOH will require the Property to be subject to an Environmental Hazard Management Plan ("EHMP") regardless of which approved clean-up alternative (*i.e.*, a capping remedy or alternative) is chosen.  An EHMP is enforced by way of a covenant that runs with title in the Property, and the EHMP will cause Plaintiff to continue to incur future costs as a consequence of the contamination for which Defendant is responsible.

55.     Defendant was required to deliver the Property in a safe and remediated condition.  Defendant's failure to do so is a breach of the Lease and has caused Plaintiff to sustain damages related to its inability to use the Property as intended.  Additionally, Defendant is liable for lost rent during the period following the expiration of the Lease up until the time the Property is restored to the condition in which Defendant is obligated to return the Property to Plaintiff pursuant to Covenants 10 and 19 of the Lease.

56.     As a result of Defendant's wrongful actions, Defendant is liable to Plaintiff for all available damages.

### FIFTH CLAIM FOR RELIEF
### INDEMNIFICATION

57.     Plaintiff incorporates by reference the paragraphs above.

58.     Covenant 17 of the Lease provided, in pertinent part, that Defendant "will indemnify and hold [Plaintiff] harmless from and against all claims and demand for loss or damage, including without limitation, property damage [...] arising out of or in conjunction with the use or occupancy of the premises by [MOECO], [...] or any failure by [MOECO] to keep said premises in a safe condition, and [MOECO] will reimburse [Plaintiff] for all their costs and expenses, including without limitation, all attorney's fees incurred in connection with the defense of any such claims, and will hold all goods, materials, furniture, fixtures, equipment, machinery and other property whatsoever on or in the premises at the sole risk of [MOECO] and hold [Plaintiff] harmless from and against all loss or damage thereto by any cause whatsoever, including without limitation, loss or damage resulting from any discharge or leaking of water onto the premises or from any conduits or facilities therein."

59.     Pursuant to CERCLA and HERL, the release of hazardous substances into a facility renders Defendant strictly liable for all costs of removal or remedial actions.

60.     Defendant's predecessors in interest released hazardous substances onto the Property.

61.     Pursuant to Covenant 17 of the Lease, Plaintiff is entitled to indemnification from Defendant for all damages arising out of Defendant's use or occupancy and for reimbursement of cost and expenses, including attorneys' fees and costs, to remediate the hazardous condition on the Property.

15

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.      A judgment in favor of Plaintiff against HECO awarding damages in amounts to be proven at trial due to Defendant's continued failure to remedy the damage caused;

B.      A declaration that HECO is liable for any and all response costs concerning or related to the continuing presence of hazardous substances on the Property;

C.      A declaration that HECO is liable to Plaintiff to contribute to and reimburse Plaintiff, or in the alternative to indemnify Plaintiff, for all damages and costs suffered or to be suffered by Plaintiff resulting from or related in any way to the release of hazardous substances on the Property;

D.      Special, general or compensatory damages in an amount to be proven at trial;

E.      Pre- and post-judgment interest;

F.      Plaintiffs' reasonable attorneys' fees and costs; and

G.      For any and all further relief that this Court may deem just and proper.

DATED: Honolulu, Hawai'i, November 24, 2021.

/s/ *Margery S. Bronster*
MARGERY S. BRONSTER
CATHERINE L. AUBUCHON
KEVIN A. MORRIS

Attorneys for Plaintiff
MISAKI'S, INC.

16

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| MISAKI'S, INC., a Hawai'i Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> HAWAIIAN ELECTRIC COMPANY, INC., a for-profit Hawaii Corporation, <br><br> Defendant. | Civil No. _____ <br> (Other Civil Action) <br><br> DEMAND FOR JURY TRIAL |

**DEMAND FOR JURY TRIAL**

Plaintiff MISAKI'S, INC., a Hawai'i Corporation hereby demands a trial by jury of all issues so triable herein.

DATED: Honolulu, Hawai'i, November 24, 2021.

/s/ *Margery S. Bronster*
MARGERY S. BRONSTER
CATHERINE L. AUBUCHON
KEVIN A. MORRIS

Attorneys for Plaintiff
MISAKI'S, INC.

| STATE OF HAWAI'I CIRCUIT COURT OF THE SECOND CIRCUIT | SUMMONS TO ANSWER CIVIL COMPLAINT | |
|---|---|---|

| CASE NUMBER | PLAINTIFF'S NAME & ADDRESS, TEL. NO. | |
|---|---|---|
| **PLAINTIFF** MISAKI'S, INC., a Hawai'i Corporation | Bronster Fujichaku Robbins Margery S. Bronster #4750 Catherine L. Aubuchon #7661 Kevin A. Morris #11147 1003 Bishop Street, Suite 2300 Honolulu, Hawai'i 96813 Tel. No.: (808) 524-5644 Facsimile: (808) 599-1881 | |
| **DEFENDANT(S)** HAWAIIAN ELECTRIC COMPANY, INC., a for-profit Corporation | | |

**TO THE ABOVE-NAMED DEFENDANT(S)**

You are hereby summoned and required to filed with the court and serve upon

Bronster Fujichaku Robbins
Margery S. Bronster #4750/Catherine L. Aubuchon #7661/Kevin A. Morris #11147
1003 Bishop Street, Suite 2300
Honolulu, Hawai'i 93813
_____,

plaintiff's attorney, whose address is stated above, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

DATE ISSUED   11/24/2021
_____

Effective Date of 07-Oct-2019
Signed by: /s/ D. Pellazar Clerk,
2nd Circuit, State of Hawai`i



 In accordance with the Americans with Disabilities Act, and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the Second Circuit Court Administration Office at PHONE NO. 244-2855, FAX 244-2932.

Form CC-CV-DIV-???