BRONSTER FUJICHAKU ROBBINS
A Law Corporation

| MARGERY S. BRONSTER | 4750 |
| CATHERINE L. AUBUCHON | 7661 |
| KEVIN A. MORRIS | 11147 |

1003 Bishop Street, Suite 2300
Honolulu, Hawai'i  96813
Telephone:  (808) 524-5644
Facsimile:  (808) 599-1881
Email:  mbronster@bfrhawaii.com
        caubuchon@bfrhawaii.com
        kmorris@bfrhawaii.com

Attorneys for Plaintiff
MISAKI'S, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| MISAKI'S, INC., <br><br> Plaintiff, <br><br> vs. <br><br> HAWAIIAN ELECTRIC COMPANY, INC., and MAUI ELECTRIC COMPANY, LIMITED, <br><br> Defendants. | Civil No. 1:21-CV-00514-HG-KJM (Other Civil Action) <br><br> FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CERTIFICATE OF SERVICE |

## FIRST AMENDED COMPLAINT

Plaintiff MISAKI'S, INC. ("Misaki's" or "Plaintiff"), by and through its

counsel, Bronster Fujichaku Robbins, files this First Amended Complaint against

Defendants HAWAIIAN ELECTRIC COMPANY, INC. ("HECO"), and MAUI

ELECTRIC COMPANY, LIMITED ("MECO") (collectively, "Defendants"), and alleges and avers the following:

## INTRODUCTION

1.      After 38 years of false promises from Defendants to remediate the environmental contamination caused by Molokai Electric Company, Limited ("MOECO"), Plaintiff brings this action against Defendants pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607 *et seq.*, the Hawaii Environmental Response Law ("HERL"), Hawai'i Revised Statutes ("HRS") chapter 128D *et seq.*, and Hawai'i common law for (i) reimbursement and indemnification for all past, present, and future costs in response to the release of hazardous substances on property now owned by Plaintiff, (ii) declaratory judgment as to liability for any and all response costs or damages, and (iii) damages.

## JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 9607, and 28 U.S.C. § 2201.  Additionally, under 28 U.S.C. § 1367, this Court has supplemental jurisdiction of all other claims alleged by Plaintiff because they are so related to the claims arising under federal law that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because all parties are located in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## THE PARTIES

4.      Plaintiff MISAKI'S, INC., is a corporation organized under the laws of the State of Hawai'i whose principal place of business is in Kaunakakai, Hawai'i.

5.      Defendant HAWAIIAN ELECTRIC COMPANY, INC. is a for-profit Hawai'i corporation whose principal place of business is 900 Richards Street, Honolulu, Hawai'i.

6.      Defendant MAUI ELECTRIC COMPANY, LIMITED is a domestic profit corporation registered to do business in the State of Hawai'i and is a wholly-owned subsidiary of Defendant HAWAIIAN ELECTRIC COMPANY, INC.

## FACTUAL ALLEGATIONS

7.      Plaintiff Misaki's, Inc. is a family-owned and operated grocery store in Kaunakakai, Molokai.  Plaintiff originally sold candy, ice cream, and sundry items, but eventually expanded to offer food, groceries, and canned goods.  In 1960, Misaki's moved to its current location, a block from the subject property.  However, the Misaki family always dreamed of expanding even further to meet the demands of Molokai's growing population.

8.      The subject property that Plaintiff eventually acquired for its expansion plans was within a block of Plaintiff's current location and owned by MOECO.  MOECO had been operating a power plant at the subject property, identified as Lots 43-A-2, 43-A-3, 43-A-4, 43-A-5, and 288, and being all of the land described in and covered by the Transfer Certificate of Title Nos. 38,151 and 70,398 (the "Property").

9.      In 1983, MOECO sold the Property to Plaintiff and leased it back from Plaintiff pursuant to an Occupancy Agreement while winding down its power plant and transitioning its operations to a different location on Molokai.  MOECO eventually left the Property in 1987, two years beyond the two years agreed to in the Occupancy Agreement ("Lease").

10.     While operating the power plant, MOECO used chemicals which included a variety of petroleum-based products, anti-corrosive paints (e.g., lead-based), and solvents that have severely contaminated the Property.  According to HECO's July 2021 Final Site Characterization Summary, the chemicals "were used as dielectric materials, coolants, and lubricants in transformers, capacitors, ballasts, and motor/hydraulic system oils."  As such, the use of these contaminates has created "risks to human and ecological populations."

11.     Before MOECO sold the Property to Plaintiff, HECO and MECO merged on November 1, 1968, thereby making MECO a wholly owned subsidiary of HECO.  In the acquisition, HECO took on all the debts and liabilities of MECO.

12.     In 1989, two years after MOECO returned the Property to Plaintiff, MECO acquired MOECO.  In this acquisition, MECO acquired all the debts and liabilities of MOECO.

13.     According to the MECO/MOECO Articles of Merger, dated July 31, 1989, MECO became the "Surviving Corporation" and MOECO ceased to exist "as soon as the Merger" became effective.   The "Effects of Merger" states that "All debts, liabilities, and obligations of, and all claims or demands for any cause existing against MECO and MOECO, shall be and become the debts, liabilities, obligations of, and the claims and demands against, the Surviving Corporation in the same manner as if the Surviving Corporation had itself incurred or otherwise become liable for them."

14.     Thus, MECO is responsible for all debts, liabilities, and obligations resulting from MOECO's pollution.  In turn, HECO, as the parent company of MECO, is also liable to Plaintiff for MOECO's pollution on the Property.

15.     In addition, MECO and HECO have made numerous false or misleading representations over the years to Plaintiff about remediating the contamination on the Property.  Yet MECO and HECO continuously failed to

remediate for over 35 years.  MECO and HECO intended for their false or misleading representations to lull Plaintiff into inaction, so that Plaintiff would not assert its right to remediation or damages.

16.    Unbeknownst to Plaintiff at the time of purchasing the Property in 1983, MOECO's use of the Property rendered it unsafe for construction or development due to years of contamination.  Tests over the last two decades by the Environmental Protection Agency ("EPA") and state Department of Health ("DOH") show several toxic contaminants present at the site.  Those include petroleum and PCBs that were used to insulate the electrical components of MOECO's power plant.

17.    HECO, along with MECO, has claimed to undertake efforts to remediate Plaintiff's property.  Despite HECO's reports to Plaintiff, EPA, and DOH stating there is no risk for exposure to MOECO's underground contaminants, Plaintiff cannot use the Property as intended because it cannot build on or develop the Property.  Plaintiff is unable to expand its grocery store until the contaminants are removed from the soil, an extremely expensive process.

18.    Defendants do not dispute that HECO and/or MECO are responsible for the removal of all contaminants.  However, the continued delays in remediating the contamination have cost Plaintiff significant losses due to Plaintiff's inability to use the Property as it intended.  Had Plaintiff been aware of the significant

contamination to the Property, Plaintiff never would have purchased it.  Moreover, Plaintiff would not have leased the Property back to MOECO had it known it would continue contaminating the soil and deliver the Property in a contaminated state.

19.    The language contained in the 1983 sale documents and subsequent Lease to MOECO demonstrates MECO's liability to Misaki's to indemnify for all costs associated with decontaminating the Property.  Most of the contamination occurred prior to the 1983 sale, as well as through the end of the Lease in 1985 and until the equipment was removed in 1987.  Nevertheless, the Property remains contaminated based upon HECO's own reports and admissions, as well as EPA and DOH testing results, and upon information and belief, the contaminants continue to leak into the ocean and groundwater.

20.    Under federal law, all potentially responsible parties remain fully liable for remediation of contamination regardless of how much time has lapsed. Only the party who caused the pollution is responsible under CERCLA for any contamination it caused while in possession of the Property.  Therefore, even though Plaintiff owned the Property during the Lease, Plaintiff is not responsible for the PCBs MOECO continued to use, and therefore, is not liable for its removal. As the Surviving Corporation of the MOECO/MECO merger, MECO is responsible for removing all pollutants from the Property.

21.    To apply CERCLA liability under Hawaiʻi law, an indemnification clause must be either broad enough to cover any and all claims, or clearly refer to environmental liability.  Here, the Lease clearly provided broad indemnification for all liability related to Plaintiff's claims.

22.    Specifically, Covenant 17 of the Lease states, in pertinent part, that MOECO "will indemnify and hold [Plaintiff] harmless from and against all claims and demand for loss or damage, including without limitation, property damage […] arising out of or in conjunction with the use or occupancy of the premises by [MOECO], […] or any failure by [MOECO] to keep said premises in a safe condition, and [MOECO] will reimburse [Plaintiff] for all their costs and expenses, including without limitation, all attorney's fees incurred in connection with the defense of any such claims, and will hold all goods, materials, furniture, fixtures, equipment, machinery and other property whatsoever on or in the premises at the sole risk of [MOECO] and hold [Plaintiff] harmless from and against all loss or damage thereto by any cause whatsoever, including without limitation, loss or damage resulting from any discharge or leaking of water onto the premises or from any conduits or facilities therein."

23.    None of the terms within the Lease are ambiguous or limiting, and the language is broad enough to encompass all environmental claims.

8

24.     In addition, Defendants are liable to Plaintiff under the terms of the Lease.  Defendants are liable under Covenant 10 of the Lease for 1) not keeping "the premises in good order and a strictly sanitary condition" in accordance with "all laws, ordinances, rules and regulations now or hereafter made by any government authority," which include CERCLA and HERL, and 2) indemnification and reimbursement "from and against all claims and demands for loss or damage" and "for all costs and expenses … incurred."

25.     The Lease Agreement's Observance of Laws, Indemnity, and Surrender Clauses created a duty for MOECO to not continue the pollution (violate laws) and to return the Property "*in good repair, order and condition*."   Therefore, Defendants are additionally liable for MOECO's breach of its obligation to deliver possession of the Property in good repair, order, and condition at the expiration of the Lease.

26.     Defendants are also liable to Misaki's for carryover rent as a remedy for breaching its surrender obligations under the Lease and at common law.  Since MECO is a wholly owned subsidiary of HECO and the Surviving Corporation from the 1989 merger with MOECO, HECO is bound to comply with the Surrender Clause that MOECO breached.  Not only are Defendants liable for the two additional years MOECO occupied the Property beyond the Lease, they are

also liable for every subsequent year that the Property remains contaminated and unusable.

27.    Independent of the Surrender Clause, common law also imposes surrender obligations. Hawaiʻi law recognizes that independent of any express covenant, applicable provisions of law impose the obligation upon a lessee to restore the premises at the termination of a tenancy.  Here, MOECO did not fully deliver possession of the Property to Misaki's at the end of the Lease, nor did it leave the Property "in good repair, order and condition."

28.    Possession means the actual dominion and control of the property, free from interference with the complete use and enjoyment of the property.  It means the same dominion and ability to hold and enjoy which the lessee had a right to expect from the lessors when he first accepted the lease and which was actually accorded to him by the lessors at that time.  MOECO did not deliver the Property in a condition that afforded Misaki's "complete use and enjoyment" of the Property.

29.    Beyond the contamination, MOECO left behind remnants of structures it installed.  This includes a pipeline that HECO's own Final Site Characterization report dated July 2021 noted that "anecdotal evidence suggests that there were likely one or more releases from the former underground fuel pipeline that supplied the former MOECO generators from the fuel farm located

adjacent to the Kaunakakai Pier."  In fact, many Molokai residents have testified that a sheen continues to be seen in the area of the pipeline that runs under the Property.  This suggests that fuel continues to move underground despite the pipeline being unused for over 30 years since a rainbow sheen is visible in the harbor when the tide is low.

30.    Multiple environmental investigations have been conducted to determine the nature and extent of contamination at the site.  Each of these investigations have indicated the presence of multiple environmental hazards. Still, nothing has been done by Defendants to remove the contaminants.  MECO and HECO have stated since as early as 1994 and as recently as July 2021 that studies are being conducted and they will commence clean-up efforts.  However, nothing has been done to physically remove the contaminants.

31.    MOECO returned the premises contaminated and in disrepair, failing to deliver possession of the Property to Misaki's as required by the express and implied covenants of surrender, and has failed to remediate the pollution.  Under Hawaiʻi common law, a tenant who fails to surrender full possession of the leased premises at the termination of the lease, thereby depriving the landlord of the full use and enjoyment of the premises, is treated as a holdover tenant.  Hawaiʻi common law further provides that a holdover tenant is liable to pay rent for the period that possession is not fully relinquished.

32.     When a tenant refuses to surrender possession of the leased premises at the end of the lease term and in good condition, the landlord is entitled to recover all the loss he has sustained by not being put in possession of the entire premises at the end of the term.  Additionally, a landlord, such as Plaintiff, is entitled to a sum equivalent to the rent which he has lost and the expenses related to legal proceedings to recover full possession of the Property.

33.     Despite the clarity of the Defendants' obligations, Defendants continue to drag their feet in remediating the environmental condition of the Property, thus extending the timeframe for testing well beyond the termination of the Lease.  Defendants have told Misaki's countless times that Defendants are working on remediating the Property.  In failing to actually remediate the Property, Defendants are continuously violating CERCLA, HERL, and the Lease.  After 35 years of owning contaminated land that has cost them years of lost revenue from the delayed expansion of Plaintiff's grocery store, Defendants must fully and finally compensate Plaintiff for its losses.

### FIRST CLAIM FOR RELIEF
### LIABILITY UNDER CERCLA, 42 U.S.C. § 9607(a)

34.     Plaintiff incorporates by reference all paragraphs above.

35.     Under CERCLA, 42 U.S.C. § 9607(a), MOECO is "liable for . . . all costs of removal and remedial action…, [and] . . .any other necessary costs of

response incurred by any other person consistent with the national contingency plan."

36.     The Property constitutes a "facility" as defined in CERCLA, 42 U.S.C. § 9601(9).

37.     MOECO is a "person" as defined in CERCLA, 42 U.S.C. § 9601(21).

38.     MOECO operated or caused to be operated a power plant that used and stored petroleum-based products, transformers, anti-corrosive paints (e.g., lead-based), and solvents.  As such, MOECO (and MECO, as MOECO's successor) is the "owner or operator" of a "facility" as those terms are defined in CERCLA, 42 U.S.C. §§ 9601(9) and (20).

39.     MOECO caused the release of hazardous substances onto the Property by means including, but not limited to, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment.

40.     MOECO, and subsequently MECO, failed to remediate the Property.

41.     HECO undertook the responsibility of reporting to Plaintiff, EPA, and DOH, and remediating the Property.

42.     Plaintiff has incurred or will incur response costs and other damages as a result of MOECO's pollution and MECO and HECO's failure to remediate the Property.

43.     As a result, Defendants are liable to Plaintiff for all costs and damages resulting from MOECO's pollution at the Property.

## SECOND CLAIM FOR RELIEF
### LIABILITY UNDER HERL, HRS § 128D-18 et seq.

44.     Plaintiff incorporates by reference all paragraphs above.

45.     The Property is a "facility" as defined in HRS § 128D-1.

46.     MOECO is a "person" as defined in HRS § 128D-1.

47.     MOECO operated or caused to be operated a power plant on the Property.  MOECO used underground lines and tanks, which are known sources of environmental contaminants, especially from petroleum products.  As such, MOECO (and MECO, as MOECO's successor) is the "owner or operator" of a "facility" as those terms are defined in HRS § 128D-1.

48.     MOECO's use of the Property caused the release of hazardous substances onto the Property by means including, but not limited to, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment.  MECO is responsible for MOECO's release of hazardous substances and the resulting liability for such release.

49.     HECO undertook the responsibility of reporting to Plaintiff, EPA, and DOH, and remediating the Property.

50.     Defendants have not commenced remediation of the Property. MOECO's contamination has damaged Plaintiff, and Defendants' failure to remediate has further damaged Plaintiff.

51.     Plaintiff has incurred or will incur response costs and other damages as a result of MOECO's pollution and MECO and HECO's failure to remediate the Property.

52.     Any response costs or damages that may be incurred are necessary and consistent with HRS Chapter 128D, the State Contingency Plan of the State of Hawai'i as set forth in Title 11 of the Hawai'i Administrative Rules Chapter 451, and other applicable administrative rules of the State of Hawai'i.

53.     As a result of MOECO's contamination, Defendants' failure to remediate, and Defendants' misrepresentations, Defendants are liable to Plaintiff for all available costs and damages.

**THIRD CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT OF LIABILITY**
**FOR RESPONSE COSTS**

54.     Plaintiff incorporates by reference all paragraphs above.

55.     An actual and substantial controversy exists between Plaintiff and Defendants as to Defendants' liability for any and all response costs associated with the Property.

56.     Plaintiff seeks a declaration of its rights and Defendants' liability for any and all response costs or damages pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201 *et seq.*, and CERCLA, 42 U.S.C. §§ 9607(a) and 9613(g)(2).

57.     CERCLA, 42 U.S.C. § 9613(g)(2) provides: "In any such action described in this subsection [relating to cost recovery actions under 28 U.S.C. § 9607], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

58.     Plaintiff will continue to incur costs associated with the Property, including but not limited to enforcement costs that are recoverable as response costs under CERCLA, 42 U.S.C. § 9601(25).

59.     MOECO's—and later, MECO's—failure to deliver the Property in a remediated and safe condition has damaged Plaintiff.  Therefore, Plaintiff is entitled to entry of a declaratory judgment that Defendants are liable for any and all response costs and damages that may be incurred by Plaintiff in evaluating, removing, and remediating the contamination on the Property.

## FOURTH CLAIM FOR RELIEF
### BREACH OF CONTRACT

60.     Plaintiff incorporates by reference all paragraphs above.

61.     MECO is contractually bound to honor MOECO's obligations contained in the Lease.

62.     Covenant 10 of the Lease required MOECO to keep the Property "in a strictly clean, neat and sanitary condition[.]"  The release of hazardous substances onto the Property by Defendants' predecessors in interest is a breach of the foregoing provision of Covenant 10.

63.     Covenant 19 of the Lease provided: "At the end of said term or other sooner determination of this agreement, Seller will peaceably deliver up to Buyer possession of the premises, together with all improvements upon and belonging to Buyer, in good repair, order and condition, except for reasonable wear and tear and as otherwise expressly provided herein[.]"  MOECO breached Covenant 19 by releasing hazardous substances in excess of the DOH limits onto the Property during the term of the Lease and delivering possession of the Property to Plaintiff with such hazardous substances remaining thereon.

64.     Covenant 18 of the Lease provided that MOECO "will not commit or suffer any act or neglect whereby the premises or any improvement there-on or the estate of Seller and Buyer therein shall at any time during said term become subject to any attachment, judgment, lien, charge or encumbrance whatsoever, except as herein expressly provided, and will indemnify and hold Buyer harmless against all loss, costs and expenses, including without limitation, all reasonable attorney's fees with respect thereto."  MOECO breached Covenant 18 because it released hazardous substances onto the Property, and as a result, the EPA and

DOH will require the Property to be subject to an Environmental Hazard Management Plan ("EHMP") regardless of which approved clean-up alternative (*i.e.*, a capping remedy or alternative) is chosen.  An EHMP is enforced by way of a covenant that runs with title in the Property, and the EHMP will cause Plaintiff to continue to incur costs as a consequence of MOECO's contamination.

65.    MOECO was required to deliver the Property in a safe and remediated condition.  MOECO's failure, and MECO's continuing failure, to do so is a breach of the Lease and has caused Plaintiff to sustain damages related to its inability to use the Property as intended.  Additionally, MECO is liable for lost rent during the period following the expiration of the Lease up until the time the Property is restored to the condition in which MOECO was obligated to return the Property to Plaintiff pursuant to Covenants 10 and 19 of the Lease.

66.    MECO lulled Plaintiff with their false promises to remediate.  Its false promises are a continuous breach of the Lease.  MECO is equitably estopped from asserting that Plaintiff's breach of contract claims is time-barred.

67.    As a result of MOECO's and MECO's breach of the Lease, MECO is liable to Plaintiff for all available damages.

### FIFTH CLAIM FOR RELIEF
### INDEMNIFICATION

68.    Plaintiff incorporates by reference all paragraphs above.

69.    Covenant 17 of the Lease provided, in pertinent part, that MOECO "will indemnify and hold [Plaintiff] harmless from and against all claims and demand for loss or damage, including without limitation, property damage […] arising out of or in conjunction with the use or occupancy of the premises by [MOECO], […] or any failure by [MOECO] to keep said premises in a safe condition, and [MOECO] will reimburse [Plaintiff] for all their costs and expenses, including without limitation, all attorney's fees incurred in connection with the defense of any such claims, and will hold all goods, materials, furniture, fixtures, equipment, machinery and other property whatsoever on or in the premises at the sole risk of [MOECO] and hold [Plaintiff] harmless from and against all loss or damage thereto by any cause whatsoever, including without limitation, loss or damage resulting from any discharge or leaking of water onto the premises or from any conduits or facilities therein."

70.    Pursuant to CERCLA and HERL, the release of hazardous substances into a facility renders MOECO/MECO strictly liable for all costs of removal or remedial actions.

71.    MOECO released hazardous substances onto the Property.

72.    Pursuant to Covenant 17 of the Lease, Plaintiff is entitled to indemnification from MECO for all damages arising out of MOECO's use or

occupancy and for reimbursement of cost and expenses, including attorneys' fees and costs, to remediate the hazardous condition on the Property.

73.    As a result of MOECO's and MECO's breach of the Lease, MECO is liable to Plaintiff for all available damages.

74.    MECO lulled Plaintiff with their false promises to remediate.  Its false promises are a continuous breach of the Lease.  MECO is equitably estopped from asserting that Plaintiff's breach of contract claims is time-barred.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.    A judgment in favor of Plaintiff against Defendants awarding damages in amounts to be proven at trial due to Defendants' continued failure to remedy the contamination on the Property;

B.    A declaration that Defendants are liable to Plaintiff for any and all response costs and damages concerning or related to the continuing presence of hazardous substances on the Property;

C.    A declaration that Defendants are liable to Plaintiff to contribute to and reimburse Plaintiff, or in the alternative to indemnify Plaintiff, for all damages and costs suffered or to be suffered by Plaintiff resulting from or related in any way to the release of hazardous substances on the Property;

20

D.    Special, general or compensatory damages in an amount to be proven at trial;

E.    Pre- and post-judgment interest;

F.    Plaintiffs' reasonable attorneys' fees and costs; and

G.    For any and all further relief that this Court may deem just and proper.

DATED: Honolulu, Hawai'i, March 1, 2022.

/s/ <i>Margery S. Bronster</i>
MARGERY S. BRONSTER
CATHERINE L. AUBUCHON
KEVIN A. MORRIS
Attorneys for Plaintiff
MISAKI'S, INC.